UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CIVIL ACTION

KIRBY RAMBO COLLECTIONS, INC.,

       Plaintiff,

v.                                        CASE NO. 2:18-cv-00180-JES-CM

LEE COUNTY,

       Defendant.

## PLAINTIFF, KIRBY RAMBO COLLECTIONS, INC.'S, MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I OF THE FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I OF THE FIRST AMENDED COMPLAINT – DISPOSITIVE MOTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Plaintiff, Kirby Rambo Collections, Inc., by and through its undersigned counsel, hereby respectfully moves this Honorable Court to enter judgment on the pleadings in favor of Plaintiff, Kirby Rambo Collections, Inc., and against Defendant, Lee County, as to Count I of Plaintiff's First Amended Complaint filed on January 30, 2019, document number 48, and in support thereof states as follows:

### I.    RELEVANT PROCEDURAL HISTORY

1. On March 19, 2018, Plaintiff filed Plaintiff's Complaint, Injunctive Relief Sought, and Demand for Jury Trial (the "Original Complaint"). Pl.'s Compl., Doc. No. 1.

2. On April 23, 2018, Defendant filed Defendant's Motion to Dismiss – Dispositive Motion (the "Motion to Dismiss"). Def.'s Mot. to Dismiss, Doc. No. 11.

1

3.  On May 4, 2018, Plaintiff filed Plaintiff's Response to Motion to Dismiss. Pl's Resp., Doc. No. 16.

4.  On June 29, 2018, this Court entered the Case Management and Scheduling Order, requiring all Motions to Add Parties or to Amend Pleadings to be filed by January 7, 2019. Order, Doc. No. 27.

5.  On September 13, 2018, Plaintiff filed its Motion to Grant Plaintiff Leave to Amend Complaint and Incorporated Memorandum of Law in Support. Pl.'s Mot., Doc. No. 39.

6.  On January 24, 2019, this Court entered an Opinion and Order granting in part and denying in part Plaintiff's Motion to Grant Plaintiff Leave to Amend Complaint and Incorporated Memorandum of Law in Support. Order, Doc. No. 47.

7.  On January 30, 2019, pursuant to the Court's Opinion and Order entered on January 24, 2019, Plaintiff filed Plaintiff's First Amended Complaint, Injunctive Relief Sought, and Demand for Jury Trial (the "First Amended Complaint"). Pl.'s Am. Compl. Doc. No. 48.

8.  Plaintiff filed three counts against Defendant as part of the First Amended Complaint, including Count I for Declaratory Judgment. Id.

9.  On February 14, 2019, Defendant filed its Answer and Affirmative Defenses to Plaintiff's Amended Complaint, Injunctive Relief Sought, and Demand for Jury Trial (the "Answer to First Amended Complaint"). Def.'s Answer, Doc. No. 51.

10. The pleadings in this matter are now closed, and the case is now at issue.

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure provide that '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.'" <u>Hayward v. Lee Cty. Sheriff's Office</u>, Case No. 2:14-cv-244, 2017 U.S. Dist. LEXIS 179244 at *3-*4 (M.D. Fla. 2017) (citing Fed. R. Civ. P. 12(c)). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." <u>Hayward</u>, 2017 U.S. Dist. LEXIS 179244 at *4 (quoting <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140 F.3d 1367, 1370 (11th Cir. 1998)). "When reviewing a motion for judgment on the pleadings, the court must view the facts in a light most favorable to the nonmoving party." <u>Id.</u> at *4 (citation omitted). "The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, and the exhibits thereto." <u>Amerisure Mut. Ins. Co. v. Crum & Forster Specialty Ins. Co.</u>, Case No. 2:12-cv-443, 2014 U.S. Dist. LEXIS 115299 at *5 (M.D. Fla. 2014) (citing <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000)). In addition, "[p]ublic records are among the permissible facts that a district court may take judicial notice of and consider when ruling on a motion for judgment on the pleadings." <u>Hayward</u>, 2017 U.S. Dist. LEXIS 179244 at *4.

### III.    FACTS ADMITTED BY DEFENDANT, THE NON-MOVING PARTY, IN ITS ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

1. Plaintiff, KIRBY RAMBO COLLECTIONS, INC., is a Florida corporation, authorized to do business in the State of Florida, with its principal place of business in Lee County, Florida. Def.'s Answer, Doc. No. 51, ¶1.

2. Defendant, LEE COUNTY, is a political subdivision of the State of Florida, located within this judicial district. Id. at ¶2.

3. Defendant is a county and a political subdivision of the State of Florida that is authorized to do business in the State of Florida, with its principal address in Lee County, Florida, and therefore is subject to this Court's personal jurisdiction. Id. at ¶5.

4. Pamela Kirby Rambo ("Ms. Rambo") is a local artist and shell collector. Id. at ¶10.

5. Ms. Rambo has worked as a volunteer for Lee County and, in doing so, has engaged in activities to promote tourism in Lee County. Id. at ¶11.

6. Beginning in early 2016, Ms. Rambo and employees of the Lee County Visitor & Convention Bureau (the "VCB"), which is a department of Lee County, discussed promotional ideas for the 2016 National Seashell Day event. Id. at ¶12.

7. Employees of the VCB discussed with Ms. Rambo the idea of displaying at the 2016 National Seashell Day event, a vehicle that Ms. Rambo and other volunteers would cover with shells. Id. at ¶13.

8. Employees of the VCB liked the idea of covering a vehicle with shells in connection with the 2016 National Seashell Day event. Id. at ¶14.

9. In April or May of 2016, Lee County identified and purchased a used 2005 Volkswagen Beetle automobile (the "Vehicle") for the approximate sum of $7,500.00. Id. at ¶17.

10. Exhibit "A" to the First Amended Complaint (and made Exhibit "A" to this Motion for Judgment on the Pleadings) is a copy of a photograph of the Vehicle as it appeared when it was purchased by Lee County. Id. at ¶18.

11. Lee County representatives delivered the Vehicle, as well as supplies purchased by the VCB, including glue, tape, and drop cloths, to Ms. Rambo. Id. at ¶19.

12. Ms. Rambo and other persons, including volunteers from the VCB and Lee County residents, collectively applied many seashells to the Vehicle in various designs and patterns. Id. at ¶20.

13. The Vehicle is commonly known as the "Shell Love Bug." Id. at ¶26.

14. There is no written agreement between Ms. Rambo and Defendant whereby Ms. Rambo sold the Sculpture[1] to Defendant. Id. at ¶30.

15. There is no written agreement between Plaintiff and Defendant whereby Plaintiff sold the Sculpture to Defendant. Id. at ¶31.

16. There is no written agreement between Ms. Rambo and Defendant whereby Ms. Rambo agreed to sell the Sculpture to Defendant. Id. at ¶32.

17. There is no written agreement between Plaintiff and Defendant whereby Plaintiff agreed to sell the Sculpture to Defendant. Id. at ¶33.

---

[1] While Defendant Lee County appears to prefer to use the term "Vehicle" to refer to both the Volkswagen Beetle automobile it purchased <u>and</u> the sculptural ornamentation permanently affixed to the Vehicle, Plaintiff instead consistently refers to the "Vehicle" as the automobile Lee County purchased, and then refers to the sculptural ornamentation permanently affixed to the Vehicle as the "Sculpture", because it is a sculptural work of art copyrightable pursuant to 17 U.S.C. § 102(a)(5), which was copyrighted by its original author as a sculptural ornamentation.

18. The attachment of seashells to the Vehicle did not add to the functionality of the Vehicle. Id. at ¶37.

19. As the creator of the Sculpture, Ms. Rambo previously publicly displayed the Sculpture on several occasions prior to 2018. Id. at ¶39.

20. Exhibit "B" to the First Amended Complaint (and made Exhibit "B" to this Motion for Judgment on the Pleadings) is a copy of a photograph of the Vehicle. Id. at ¶40.

21. Ms. Rambo is listed as the author and copyright claimant on U.S. Copyright Registration No. VA 2-077-806. Id. at ¶45.

22. Ms. Rambo is listed as author of the "Shell Love Bug" work on U.S. Copyright Registration No. VA-2-077-806. Id. at ¶¶46, 95-96; Pl.'s First Am. Compl., Doc. No. 48, Exhibit "C".

23. Exhibit "C" to the First Amended Complaint (and made Exhibit "C" to this Motion for Judgment on the Pleadings) is a copy of the Certificate of Registration for U.S. Copyright Registration No. VA 2-077-806. Def.'s Answer, Doc. No. 51, ¶46.

24. Defendant and Ms. Rambo agreed to meet to discuss the Sculpture at a meeting on March 9, 2018 (the "March 9, 2018 Meeting"). Id. at ¶55.

25. Representatives of Plaintiff, including Ms. Rambo, Plaintiff's counsel, representatives of Defendant, and Defendant's counsel met at the March 9, 2018 Meeting. Id. at ¶56.

26. Subsequently, later that same day, Plaintiff sent Defendant a letter (the "March 9, 2018 Letter"). Id. at ¶58.

27. A true and accurate copy of the March 9, 2018 Letter is attached to the First Amended Complaint as Exhibit "F" (and is made Exhibit "D" to this Motion for Judgment on the Pleadings). Id. at ¶59.

28. Pursuant to the March 9, 2018 Letter, Plaintiff: (i) expressly told Defendant that any future use of the Sculpture by Defendant was unauthorized and not consented to, in any way, shape or form, by Plaintiff; and (ii) advised Defendant that any future use, display, advertisement, promotion, or marketing of the Sculpture, and any future or continued attempts to deny Plaintiff access to the Sculpture, would be considered willful infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 504(c)(2). Id. at ¶60.

29. Brian Ososky, Senior Manager of the VCB and an employee of Lee County, authorized Krista Wyant, an intern with the VCB, to drive the Vehicle to the Marco Island Shell Club Show event on March 10, 2018. Id. at ¶61.

30. On March 10, 2018, Ms. Wyant, an intern with the VCB, drove the Vehicle to the Marco Island Shell Club Shell Show event with the authorization of Mr. Ososky. Id. at ¶62.

31. On March 10, 2018, representatives of Defendant intentionally promoted and displayed the Sculpture to the public at the 38th Annual Marco Island Shell Show. Id. at ¶63.

32. Representatives of Defendant drove the Sculpture to and from the 38th Annual Marco Island Shell Show on March 10, 2018. Id. at ¶67.

33. Plaintiff did not expressly state that it consented to the driving of the Vehicle to and from the Marco Island Shell Club Shell Show event. Id. at ¶68.

34. Brian Ososky, Senior Manager of the VCB and an employee of Lee County, authorized the Vehicle to be driven to the Lakes Park Enrichment Foundation's Brick by Brick Picnic on March 18, 2018. Id. at ¶71.

35. Nancy MacPhee, Manager of the VCB, drove the Vehicle to the Lakes Park Enrichment Foundation's Brick by Brick Picnic on March 18, 2018, with the authorization of Mr. Ososky. Id. at ¶ 72.

36. The Vehicle was displayed at the event. Id. at ¶82.

37. Plaintiff did not expressly state that it consented to the display of the Vehicle at the Lakes Park Enrichment Foundation's Brick by Brick Picnic on March 18, 2018. Id. at ¶77.

38. Nancy MacPhee, Manager of the VCB, drove the Vehicle from the Lakes Park Enrichment Foundation's Brick by Brick Picnic on March 18, 2018, with the authorization of Mr. Ososky. Id. at ¶80.

39. Defendant has retained possession of the Vehicle since December 2017. Id. at ¶54.

40. According to Defendant, Plaintiff's permission or consent is not required for Lee County to use, promote, or display the Vehicle. Id. at ¶70.

## IV. ARGUMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

The Federal Declaratory Judgment Act gives federal district courts the power to declare the rights and legal relations of parties "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Here, in Count I of the First Amended Complaint,

Plaintiff is seeking a declaratory judgment adjudging that: (a) the Shell Love Bug Sculpture is a copyrighted work; (b) Pamela Rambo was the owner of the copyrighted work until she assigned her copyright to Plaintiff; (c) Plaintiff has owned the only copyright to the Sculpture since Pamela Rambo assigned the copyright to Plaintiff on March 9, 2018; (d) any person who publicly displayed the Sculpture after March 9, 2018, without Plaintiff's permission or consent, infringed upon Plaintiff's copyright to the Sculpture; (e) depriving or forbidding Plaintiff from publicly displaying the Sculpture violates Plaintiff's copyright to the Sculpture; and (f) depriving or forbidding Plaintiff from accessing the Sculpture so that it may create derivatives of the Sculpture violates Plaintiff's copyright to the Sculpture. Pl.'s Am. Compl., Doc. 48. Plaintiff is also seeking costs and such other and further relief as this Court deems just and appropriate under the circumstances. Id.

Here, based upon the allegations previously admitted by Defendant when it filed its Answer to First Amended Complaint and based upon the uncontroverted and undisputed exhibits attached to the First Amended Complaint, it has been clearly and unequivocally established that Plaintiff is legally entitled to declaratory judgment as pled in Count I of the First Amended Complaint. This is largely because Defendant's admissions and the exhibits attached to the First Amended Complaint irrefutably demonstrate that: (a) the Shell Love Bug Sculpture is protectable under the Copyright Act as a copyrightable work of art; and (b) Pamela Kirby Rambo legitimately and solely owned the copyright to the Shell Love Bug Sculpture as a sculptural ornamentation before she assigned the copyright to Plaintiff.

## A.  The "Shell Love Bug" is protectable under the Copyright Act as a copyrightable work of art

"Copyright protection subsists, in accordance with [the Copyright Act], in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Copyrightable works of art include "pictorial, graphic, and sculptural works". 17 U.S.C. § 102(a)(5). Under the Copyright Act, "pictorial, graphic, and sculptural works" include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101.

Under the Copyright Act, the design of a useful article can be considered a pictorial, graphic, or sculptural work, but only if, and only to the extent that, "such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101. Such designs can satisfy this requirement by being either physically or conceptually separate from the utilitarian function of the useful article. Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc., 549 Fed. App'x 913, 919 (11th Cir. 2013) (citing Norris Indus. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983))[2]; accord Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980).

---

[2] Although the Eleventh Circuit Court of Appeals ultimately held the author in Progressive did not have a copyright, this was because the author in Progressive sought to copyright an entire light fixture as a whole, including its utilitarian function, and not just its aesthetic, ornamental features. Progressive Lighting, Inc., 549 Fed. App'x at 921. Here, Pamela Rambo did not copyright the Volkswagen Beetle as an automobile (nor

Conceptual separability "refers to 'ornamental, superfluous designs contained within useful objects.'" Progressive, 549 Fed. App'x at 920 (quoting Norris, 696 F.3d at 924). Ornamentations which have been afforded copyright protection include the "carving on the back of a chair and a floral relief design on silver flatware." Norris, 696 F.2d at 923. These items were "ornamental, superfluous designs contained within useful objects." Norris, 696 F.2d at 923-24. "Ornamental articles are 'all decorative articles designed primarily to beautify, embellish, or adorn,' and if the requirements of originality and creativity are satisfied, [they] are entitled to registration." Norris, 696 F.2d at 921-22 (citation omitted).

Here, it has been demonstrated, based upon Exhibits A and B to the First Amended Complaint, and attached hereto as Exhibits A and B to this Motion, that the "Shell Love Bug" Sculpture is a creative and original sculptural piece of applied art fixed in a tangible medium of expression. Defendant admitted the Sculpture was a piece of artwork fixed in a tangible medium of expression when Defendant admitted in its Answer to the First Amended Complaint that many seashells were applied to the Vehicle in various designs and patterns. Def.'s Answer, Doc. No. 51, ¶20. Defendant also admitted the Sculpture is conceptually separate from the Vehicle, the useful article, when it admitted that adding the

_____

could she have according to the Eleventh Circuit's decision in Progressive), but instead, she only had (and only received a Certificate of Registration from the United States Copyright Office for) the sculptural ornamentation affixed to the Volkswagen automobile, which she subsequently assigned to the Plaintiff. This case and Kieselstein are thus both distinct from Progressive because both in this case and in Kieselstein, the authors copyrighted just the superfluous, aesthetic ornamentations. Kieselstein-Cord, 632 F.2d at 993.

seashells to the Vehicle "did not add to the functionality of the Vehicle." Id. at ¶37. It is plainly evident, from the two photographs (i.e. Exhibits A and B) that the shells are a sculptural ornamentation, designed "primarily to beautify, embellish, or adorn" and therefore the design and the ornamentation satisfy the requirements of being copyrightable. See Norris, 696 F.2d at 921-22 (citation omitted).

This case is analogous to Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989 (2d Cir. 1980). In Kieselstein, the artist created bejeweled belt buckles, including the "Winchester" and the "Vaquero". 632 F.2d at 990. For these two belt buckles, the artist worked from original designs he created. Id. The artist registered the Vaquero belt buckle with the United States Copyright Office, and the work was specifically described by the Registration as a "sculpture". Id. at 991. The trial court found the copyrights were invalid because they "fail(ed) to satisfy the test of separability and independent existence of the artistic features…". Id. The artist appealed to the Second Circuit Court of Appeals, which only had to decide whether the two belt buckles could be copyrighted. Id. The Second Circuit reversed the trial court's decision and found the "primary ornamental aspect of the Vaquero and Winchester buckles" were "conceptually separable from their subsidiary utilitarian function" and therefore the court ruled that both belt buckles were copyrightable under the Copyright Act. Id. at 993-94.

As bejeweled belt buckles in Kieselstein have been adjudged to be conceptually separate from their utilitarian function of being ordinary belt buckles and thus worthy of copyright protection as sculptural ornamentations, then here, the Shell Love Bug Sculpture, as it is conceptually separate from the utilitarian function of a Volkswagen Beetle

12

automobile, is thus worthy of copyright protection as a sculptural ornamentation. If chair carvings, silverware designs, and belt buckles are copyrightable, then so too is the Shell Love Bug Sculpture. The two photographs (Exhibits A and B) demonstrate how the sculptural ornamentation of the Shell Love Bug Sculpture is conceptually different from the original Volkswagen Beetle, because it is plainly obvious there is a conceptual difference between Exhibits "A" and "B". Compare Exhibit "A" with Exhibit "B". In fact, the Shell Love Bug Sculpture is even more conceptually different than the bejeweled belt buckles in Kieselstein because the Volkswagen Beetle previously existed in its full utilitarian form as shown by Exhibit "A". None of the sea shell designs which make up the Shell Love Bug Sculpture add to the original functionality of the Volkswagen automobile as shown by Exhibit "A" and as admitted by Defendant. Def.'s Answer, Doc. No. 51, ¶37.

Importantly, the Second Circuit in Kieselstein was justifiably concerned that if the two bejeweled belt buckles were not copyrightable, then this would "take the vast majority of belt buckles wholly out of copyrightability." 632 F.2d at 994. Here, that same logic applies. If the Shell Love Bug sculptural ornamentation and design is not copyrightable, then neither is the Batmobile, the Ecto-1 (the Ghostbusters automobile), or the General Lee (the motor vehicle in the Dukes of Hazzard), etc. Specifically, the "General Lee" was copyrighted in 1981 as a sculpture by Warner Brothers, Inc., Copyright No. VA0000067937. This Court should not take the "Shell Love Bug" out of copyrightability, because this will ultimately take the vast majority of art cars and external automobile designs wholly out of copyrightability, just as the Second Circuit feared would happen to belt buckles in Kieselstein.

13

An original, creative piece of artwork does not lose its copyrightability merely because the medium or canvas upon which it is based is an automobile. If that were the case, then any person could wrap his or her automobile in a copyrighted photograph or piece of artwork, and that person would not be liable for copyright infringement because the copyrighted piece would have lost its copyrightability by virtue of being incorporated into, or made a part of, the automobile. To Plaintiff's knowledge, this carveout exception is not supported by either the Copyright Act or any case law interpreting or enforcing the Copyright Act.

Further, the Copyright Act provides that "[w]hen, after examination, the Register of Copyrights determines that…the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office." 17 U.S.C. § 401(a). Here, it is uncontroverted that the United States Copyright Office issued a Certificate of Registration, U.S. Copyright Registration No. VA 2-077-806, to Pamela Kirby Rambo as the author and copyright claimant for the sculptural ornamentation known as the "Shell Love Bug." Def.'s Answer, Doc. No. 51, ¶¶45-46, 96-96; Pl.'s Am. Compl., Doc. No. 48, Exhibit "C". Accordingly, pursuant to 17 U.S.C. § 401(a), the Register of Copyrights must have determined the sculptural ornamentation known as the Shell Love Bug Sculpture constituted "copyrightable subject matter" and that the Shell Love Bug Sculpture must have satisfied all other "legal and formal requirements" of the Copyright Act.

The Copyright Act further provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 401(c). It is uncontroverted that a copy of U.S. Copyright Registration No. VA 2-077-806 was attached to the First Amended Complaint (and is likewise attached to this Motion) as Exhibit "C". Def.'s Answer, Doc. No. 51, ¶46. Accordingly, because the Certificate of Registration, U.S. Copyright Registration No. VA 2-077-806, was made before or within five years after first publication of the work, the copyright constitutes prima facie evidence of the validity of the sculptural ornamentation copyright and of the facts stated in the Certificate of Registration, including the fact that Pamela Kirby Rambo is the author of the sculptural ornamentation known as the "Shell Love Bug."

Here, even in the light most favorable to Defendant as the non-moving party, Plaintiff is clearly entitled to the relief is seeks in this case, as it has been clearly established, from the pleadings and the exhibits, that the Shell Love Bug Sculpture is copyrightable as an original piece of artwork fixed in a tangible medium of expression.

### B. Pamela Kirby Rambo legally owned the copyright to the "Shell Love Bug", as the Author of the sculptural ornamentation, before she assigned the Copyright to Plaintiff

Pursuant to the Copyright Act, "[c]opyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Comm. for Creative Non-

Violence v. Reid, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102). The action of creation is defined as fixing the idea into a fixed, tangible medium of expression. Id.

This case is analogous to the United States Supreme Court's decision in Comm. for Creative Non-Violence v. Reid, 490 U.S. 730 (1989). In Reid, the Community for Creative Non-Violence (CCNV) decided to sponsor the creation of a statue to dramatize the plight of the homeless in Washington, D.C. during its annual Christmastime Pageant of Peace. Reid, 490 U.S. at 733. James Earl Reid ("Mr. Reid"), a local sculptor, agreed to sculpt three human figures that would be a part of the statue. Id. at 733. "The parties agreed that the project would cost no more than $15,000.00, not including Reid's services, which he offered to donate. The parties did not sign a written agreement. Neither party mentioned copyright." Id. at 734. CCNV paid Reid $15,000.00 for the materials to create the statue. Id. at 734-735. "Throughout November and the first two weeks of December 1985, Reid worked exclusively on the statue, assisted at various times by a dozen different people who were paid with funds provided in installments by CCNV." Id. at 734. Reid completed the statue and the statue was displayed for a month. Id. at 735. Several weeks later, the CCNV began making plans to take the statue on a tour of several cities to raise money for the homeless. Id. Reid objected to the tour, arguing the statue could not withstand the tour based on the durability of the statue's material. Id. Reid filed a certificate of copyright registration for "Third World America", the statue, in his name, and announced plans to take the sculpture on a more modest tour than the one suggested by the CCNV. Id. The CCNV then filed a competing certificate of copyright registration, and sued Reid for return of the sculpture and a determination of copyright ownership to "Third World America". Id.

16

The United States District Court for the District of Columbia found the CCNV owned the copyright to "Third World America" because it was a "work made for hire" under section 101 of the Copyright Act. Id. The Court of Appeals for the District of Columbia reversed and remanded, holding that Mr. Reid owned the copyright to "Third World America" because the statue was not created as a "work made for hire." Id. at 736. The United States Supreme Court granted certiorari and affirmed the Court of Appeals' decision, holding that "Third World America" was not a "work made for hire" and that Mr. Reid was an author of the "Third World America" statue under the Copyright Act. Id. at 736, 753.

What is especially important to note about the Reid decision is that Mr. Reid was deemed to be an author of the "Third World America" statue under the Copyright Act by the United States Supreme Court even though the CCNV: (i) made decisions about the creation and design of the statue, including what material the statue would be made out of; (ii) rejected design plans Mr. Reid had for the creation of the "Third World America" statue; (iii) paid Mr. Reid $15,000.00 for the materials; (iv) paid for dozens of people to assist Mr. Reid in the creation of the "Third World America" statue; (v) visited Mr. Reid to oversee his progress; (vi) created the base of the sculpture without Mr. Reid's assistance; and (vii) registered its own competing copyright for the statue. Even under these circumstances, Mr. Reid was still considered an author of the "Third World America" statue, because he was the one creating the "Third World America" statue, and this was being done in the absence of an employment agreement or a written work for hire arrangement.

Just as Mr. Reid was an author of "Third World America" statue as the statue's sculptor in <u>Reid</u>, here, the author of the Shell Love Bug Sculpture is Pamela Rambo (and thus by extension, Plaintiff, Kirby Rambo Collections, Inc., by virtue of the Assignment) as the sculptor's creator and artist. Here, Pamela Rambo worked in her own studio at her house, like Mr. Reid worked in his own studio in <u>Reid</u>. Here, while some of the materials were donated or provided by Defendant to create the Shell Love Bug Sculpture, in <u>Reid</u>, all of the materials used to create the "Third World America" sculpture were either paid for or provided by the CCNV, and even then, Mr. Reid was an author of the "Third World America" statue. <u>Id.</u> at 736, 753. Here, the parties did not sign a written agreement, just like the parties in <u>Reid</u> did not sign a written agreement. Here, Pamela Rambo registered for a copyright for the "Shell Love Bug", just like Mr. Reid did for the "Third World America" statue in <u>Reid</u>. Importantly, unlike in <u>Reid</u>, Defendant Lee County has never even registered for a copyright for the Shell Love Bug Sculpture, despite displaying it publicly as a work of art on several occasions without Plaintiff's permission or consent.

Much of this analysis may be unnecessary because Defendant has admitted Ms. Rambo was "the creator" of the Shell Love Bug Sculpture. Def.'s Answer, Doc. No. 51, ¶ 39. Further, Defendant admits Ms. Rambo applied many seashells to the Vehicle in various designs and patterns. Def.'s Answer, Doc. No. 51, ¶20. Although Defendant couches this admission by stating that other people were involved in the process, including volunteers from the VCB, this is similar to Mr. Reid being "assisted at various times by a dozen different people who were paid with funds provided in installments by CCNV." <u>Id.</u> at 734. Since, in that circumstance, the United States Supreme Court ruled Mr. Reid was an author

of the "Third World America" statue, then here, Pamela Rambo is the original author of the Shell Love Bug Sculpture, despite being assisted by various nameless individuals according to Defendant.

A copyright registration is prima facie evidence of ownership. Roberts v. Gordy, 877 F.3d 1024, 1028 (11th Cir. 2017); see also PK Studios, Inc. v. R.L.R. Invs., LLC, Case No. 2:15-cv-389, 2016 U.S. Dist. LEXIS 116057 (M.D. Fla. Aug. 30. 2016). The copyright registration in this case, attached as Exhibit "C" to the First Amended Complaint and to this Motion, lists the author, and thus owner, of the Shell Love Bug sculptural ornamentation as Ms. Rambo. Def.'s Answer, Doc. No. 51, ¶¶45-46, 95-96.

Accordingly, Pamela Kirby Rambo was the author of the Shell Love Bug sculptural ornamentation, and she was the true copyright holder to the valid copyright for the Shell Love Bug Sculpture before she assigned it to Plaintiff.

## V.    CONCLUSION

Defendant, in its Answer to First Amended Complaint, has admitted enough material facts pled by Plaintiff to unequivocally demonstrate that: (a) the Shell Love Bug Sculpture is copyrightable as an original work of art fixed in a tangible medium of expression; (b) that Pamela Kirby Rambo is the author of the Shell Love Bug Sculpture as the sculptor's creator, and because, like in Reid, she is the artist who fixed the sculpture into a tangible medium of expression when she collectively applied the seashells to the Vehicle in various designs and patterns; (c) a valid and legitimate copyright was issued to Pamela Kirby Rambo for the "Shell Love Bug" as a sculptural ornamentation by the United

States Copyright Office; and (d) that Pamela Kirby Rambo assigned her copyright to the Shell Love Bug Sculpture to Plaintiff, Kirby Rambo Collections, Inc.

Count I of the First Amended Complaint is not asking this Court to determine damages or any particular person's liability for infringing upon the copyright. Based upon Defendant's admissions, Plaintiff is legally entitled to the declaratory judgment it seeks in Count I of the First Amended Complaint.

Consequently, for the above-mentioned reasons, Plaintiff, Kirby Rambo Collections, Inc. by and through its undersigned counsel, hereby respectfully requests this Honorable Court grants its Motion for Judgment on the Pleadings as to Count I of the First Amended Complaint in favor of Plaintiff, Kirby Rambo Collections, Inc., and against Defendant, Lee County.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2019, I filed a true and accurate copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the counsel or parties of record on the below Service List.

Dated March 20, 2019.

Respectfully submitted,

**WOODWARD, PIRES & LOMBARDO, P.A.**
3200 Tamiami Trail North, Suite 200
Naples, Florida 34103
(239) 649-6555
Facsimile (239) 649-7342

20

By: **_/s/ Joseph M. Coleman_**
Joseph M. Coleman, Esq.
Florida Bar No. 119110
Zachary W. Lombardo, Esq.
Florida Bar No. 1753
*Counsel for Plaintiff*
jcoleman@wpl-legal.com
lliy@wpl-legal.com
zlombardo@wpl-legal.com
lcompton@wpl-legal.com

**<u>SERVICE LIST</u>**

**Mark A. Trank, Esq.**
Assistant County Attorney
Florida Bar No. 57713
trialsection@leegov.com

**James L. Holloway, III, Esq.**
Assistant County Attorney
Florida Bar No. 41175
trialsection@leegov.com
Lee County Attorney's Office
P.O. Box 398
Fort Myers, FL 33902-0398

**Richard E. Fee, Esq.**
Fee & Jeffries, P.A.
1227 N. Franklin Street
Tampa, FL 33602
Florida Bar No. 813680
rfee@feejeffries.com
jbaskerville@feejeffries.com

**Kathleen M. Wade, Esq.**
Fee & Jeffries, P.A.
1227 N. Franklin Street
Tampa, FL 33602
Florida Bar No. 127965
kwade@feejeffries.com